## 55663. POWERS v. THE STATE.

SMITH, Judge.

We granted this interlocutory appeal to review the trial court's denial of Powers' motions to quash certain in-court identifications which allegedly would be tainted by impermissibly suggestive pre-trial procedures. We conclude that the identification procedures employed here were unduly suggestive, that there was not proof of a

sufficient independent source for the identifications, and, therefore, that the identification thus formed was tainted, and, if introduced at trial, would likely operate to deny appellant a fair trial. The judgment is reversed.

## I. Facts

The appellant, Camdon Powers, was indicted on one count of selling cocaine to Agent Biello (Indictment I) and on three counts of selling cocaine to Agent Arcangeli (Indictment II). The sale to Biello occurred on September 30, 1976; the sales to Arcangeli were on October 15, 21, and 29, 1976.

Evidence introduced at a hearing on the motions to quash showed that the two agents exchanged information about their respective cocaine buys, and each was under the impression that he had bought the drug from an individual known as Camdon Higgins. About six months following the drug buys, Biello obtained a warrant for the arrest of Camdon Higgins, and he went to the rented home of Powers to serve the warrant. (He would not reveal what led him to this particular address.) Biello claims that he walked into the house and called for Camdon, heard a response from a particular room, and moved to that room while he and his partner acted quickly to secure the entire premises. He claims to have recognized Powers as the individual from whom he bought cocaine, at which time he arrested Powers.

Two others who were present in the house at the time, Powers' girlfriend and his roommate, testified at the hearing, as did Powers. They each offered the following account of the event. Two "hippie looking" men entered their house at about 10:30 a.m., and one of them, identified as Biello, looked straight at Powers and asked him if he was Camdon. Powers, not knowing who was asking or why, said "no." Biello then asked the roommate if he was Camdon. The roommate, too, said "no." Biello asked if they knew where Camdon was, and the roommate suggested that Camdon might be at his mother's restaurant. Shortly thereafter, the two plain-clothes officers were joined by two uniformed policemen, and it then became apparent to the occupants that Biello and his colleague were police officers. Biello threatened to arrest all the occupants if they did not produce Camdon, and he

explained that Camdon was wanted in connection with a hit-and-run accident. According to the occupants, some of the officers had begun to search the house during this exchange. At this point, the roommate turned to Powers and said, "Camdon, tell them who you are." Biello immediately placed Powers under arrest for the sale of cocaine.

Thereafter, Biello contacted Arcangeli and told Arcangeli that the Camdon Higgins they were seeking was really Camdon Powers; Biello told Arcangeli where he could get a mug shot of Powers; Arcangeli did so; and later, when Powers was in court in response to Biello's warrant, Biello pointed out Powers to Arcangeli. Arcangeli had a warrant for Powers' arrest, and he gave it to Biello to serve.

## II. Analysis

### A. The Independent Source Exception.

The trial court denied the motion to quash Biello's identification in Indictment I and Arcangeli's in Indictment II, both on the ground that each officer testified that he based his identification of Powers on his independent recollection of Powers' appearance at the time of the cocaine buys. It is clear that the court was basing its decision on the "independent source" rule: If an in-court identification is based on a source independent of the allegedly impermissible pre-trial identification, then those pre-trial procedures need not be inquired into, for they are immaterial. An examination of cases where our Supreme Court has followed this rule shows two factual patterns where the rule applied: (1) Where the testimony as to independent source is "without dispute," *Wimberly v. State,* 233 Ga. 386 (211 SE2d 281) (1974); or (2) where the witness, prior to the allegedly suggestive procedure, had given a precise and accurate description of the defendant based on an ample opportunity to observe the defendant and remember the defendant's appearance. *Mathis v. State,* 231 Ga. 401 (6) (202 SE2d 73) (1973). We find that the evidence does not meet the *Wimberly* or the *Mathis* standard as to either agent. The trial court thus erred in relying on the independent source rule.

*Indictment I.* The evidence that Biello recognized the appellant from his earlier dealing with him (six

months earlier, in fact) is hardly without dispute. There was testimony from three witnesses to the effect that Biello looked straight at Powers and still did not recognize him until Powers' roommate referred to Powers by his first name, Camdon.

Neither was the description Biello recorded immediately after the buy precise and accurate. Biello testified that he had described Camdon as 5' 10" tall, 160 lbs., brown hair medium length, green eyes, no facial hair. Evidence introduced into the record showed that within twenty days of Biello's drug buy the appellant was 5'8" tall, 168 lbs., brown hair *well down over his shoulders, blue* eyes, with a *mustache and beard.*

*Indictment II.* Arcangeli's testimony that he had an independent recollection of the cocaine seller's appearance is contradicted, at least, by Biello's testimony that he had to point out Powers to Arcangeli when Powers was appearing in court. Moreover, a review of the transcript shows numerous instances in which Arcangeli's testimony on this point is either incomplete or is internally contradictory.

Arcangeli testified that he could not remember what contemporaneous description he had given of the person who sold him cocaine. The few details he did recall were generally contradicted by the description of Powers noted above. We must stress that, if the state seeks to invoke the independent source exception to the rule otherwise banning impermissible pre-trial identifications, then the state must cooperate in proving the applicability of the exception. During the hearing, the state adamantly and steadfastly refused to reveal the police reports in its files, which reports contained each officer's contemporaneous descriptions of the cocaine seller, and the assistant district attorney would not allow the agents to see their reports to refresh their recollections. We cannot test whether Arcangeli's description was precise and accurate, because the state prevented the disclosure of that description. Having done so, the state may not now rely on the independent source exception.

B. The Pre-arrest Procedure.

Was the identification procedure used by these officers constitutionally tainted? We are required to

consider, from the totality of the circumstances, (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention at the time of the crime; (3) the accuracy of the witness' prior descriptions of the criminal; and (4) the level of certainty demonstrated by the witness at the time of confrontation. Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1973); *Yancey v. State,* 232 Ga. 167 (205 SE2d 282) (1974). It is clear that the police officer witnesses, at the time of the crime — i. e., at the time they were buying the cocaine from the offender — had an excellent opportunity to view the criminal and were highly attentive, at least in comparison to the typical lay witness who is viewing a sudden, possibly violent, crime. However, the evidence casts serious doubt on whether Powers was in fact the man who sold the cocaine to them. First, the witnesses' prior descriptions, to the extent that we know what they were, seemingly contradict each other, and they contradict evidence showing what Powers looked like at the time of the crime. For example, Arcangeli was able to recall that the man who sold him cocaine on October 15, 21, and 29, 1976, had medium length, curly, dark blond hair and a very light, wispy, goatee. A police report was introduced by the defense, showing that Powers was arrested in Florida on October 20, 1976, on a traffic charge, and the mug shot included in the report shows him with quite long hair and a fairly complete beard and mustache. This evidence of misdescription, together with evidence showing an apparent inability of the officers to recognize Powers several months later (uncertainty at time of confrontation), leads us to conclude that there is too high a possibility of misidentification.

To say that the identifications are not tainted because, after the fact, each officer *said* that he had immediately recognized the criminal at the time of confrontation, is to beg the question. The issue is not whether the witness has a sincere belief that he recognized and identified the correct individual; the issue is whether any unduly suggestive factors entered into the equation and influenced the witness to reach an incorrect — albeit sincere — conclusion. The bottom line is whether, under the totality of circumstances, there is a

likelihood of misidentification.

Officer Biello went to a particular address looking for a man named Camdon Higgins, a man he had seen for only a few minutes, and that brief encounter was over six months stale. There he came across a man named Camdon Powers, a man whose description is similar to, but different in some material respects from, the officer's earlier description of Camdon Higgins. This situation lends itself to rather powerful suggestiveness; the coincidences could easily lead a sincere and rational observer to overlook the differences. This is the evil which the rule against suggestive identification procedures is designed to remedy.

Officer Arcangeli received a call from Biello telling him that he had found Camdon Higgins, who, he said, was really Camdon Powers. The officer obtained a picture of Powers, expecting beforehand that it would be the picture of the man who sold him cocaine. Again, the suggestiveness is powerful.

In both cases, had a lay witness been subjected to the same suggestive influences, the identification would be quashed, even though the lay witness may have been convinced to a certainty that he had identified the culprit. This court said in *Towns v. State,* 136 Ga. App. 467, 468 (221 SE2d 631) (1975), "Finally, an examination of the confrontation shows that it was extremely suggestive and conducive to misidentification. Appellant was lying on a cot in a jail cell. He was wearing a toboggan. Crumbley was asked to come to the jail for the purpose of identifying a suspect and was shown *only* the appellant. We cannot imagine a more suggestive atmosphere for a criminal identification." The atmosphere surrounding these identifications was no less suggestive.

### III. Conclusion

The trial court should have granted the appellant's motion to quash the in-court identifications by Biello and Arcangeli. We expressly defer any ruling on the remaining issue raised by this appeal.

*Judgment reversed. Quillian, P. J., Webb, Shulman and Birdsong, JJ., concur. Bell, C. J., Deen, P. J., Mc-Murray and Banke, JJ., dissent.*

ARGUED APRIL 3, 1978 — DECIDED SEPTEMBER 14, 1978 — REHEARING DENIED OCTOBER 12, 1978 — 

*Victoria D. Little,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Gordon H. Miller, Assistant District Attorneys,* for appellee.

DEEN, Presiding Judge, dissenting.

Detective Biello testified: (1) that on September 30th he purchased cocaine from appellant, and (2) that at the time of arrest as soon as he observed appellant, "I knew exactly who he was."

On appeal the evidence must be construed most favorably to upholding of the findings and judgment made. *State v. Smith,* 134 Ga. App. 602 (215 SE2d 345) (1975). We may not consider credibility of the witnesses, weight of testimony and resolution of any inconsistencies or conflicts as this is a matter for the trial court.

From a totality of the circumstances, it cannot be said that the evidence demands a finding of a likelihood of a tainted misidentification. There is some competent evidence to support the trial court, and I would respectfully affirm.

I am authorized to state that Chief Judge Bell, Judge McMurray and Judge Banke join in this dissent.